Tagged Opinion



**ORDERED in the Southern District of Florida on December 11, 2008.**

**Paul G. Hyman, Chief Judge
United States Bankruptcy Court**

_____

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

In re:                          CASE NO. 07-15746-BKC-PGH

Anthony F. Cutaia,              Chapter 7

    Debtor.
_____/

Deborah Menotte,                ADVERSARY NO: 08-01359-PGH

    Plaintiff
v.

Anthony F. Cutaia,

    Defendant.
_____/

### MEMORANDUM ORDER DENYING DEBTOR'S DISCHARGE

**THIS MATTER** came before the Court for trial on September 11, 2008, upon Deborah Menotte's (the "Trustee") *Complaint to Deny*

*Debtor's Discharge* ("Complaint") filed on May 29, 2008. The Complaint contains two counts. Count one seeks denial of Anthony F. Cutaia's (the "Debtor") discharge pursuant to 11 U.S.C. § 727(a)(2)(B) on the grounds that the Debtor transferred, without notice or consent, his interest in a Rolex Cellini watch ("Rolex"), with the intent to hinder, delay, or defraud the Trustee and creditors. Count two seeks denial of the Debtor's discharge pursuant to 11 U.S.C. § 727(a)(4)(A) on the grounds that the Debtor knowingly and fraudulently made a false oath by failing to disclose his interest in a Movado watch ("Movado") on his Schedules. For the reasons set forth below, the Court denies the Debtor's discharge pursuant to § 727(a)(2)(B).

## FINDINGS OF FACT

The Debtor filed this Chapter 7 bankruptcy petition on July 24, 2007 (the "Petition Date"). However, the Debtor previously filed a Chapter 7 bankruptcy petition on March 25, 1994 and received a discharge. *See In re Cutaia*, No. 94-30982-SHF (Bankr. S.D. Fla. 1994). Also, on August 26, 1998, the Debtor's spouse, Susan D. Cutaia, filed for Chapter 7 bankruptcy relief and received a discharge. *See In re Cutaia*, No. 98-34586-SHF (Bankr. S.D. Fla. 1998). During the Debtor's 1994 bankruptcy proceeding, the trustee objected to the value of the Debtor's claimed exempt assets. The Debtor resolved the issue by making payments to the trustee equal

to the value of the claimed exempt assets over the actual exemption amount permitted under applicable law.

In this case, the Debtor filed his Schedules and Statement of Financial Affairs on August 22, 2007. On the Debtor's Summary of Schedules, he listed liabilities of $7,801,203.82 and assets of $16,651.00. On Schedule C, the Debtor claimed $16,651.00 in exempt personal property, including the Rolex. On Schedule B, the Debtor disclosed ownership of the Rolex and asserted it had a current value of $250.00.

On October 16, 2007, the Court entered an *Agreed Order Granting Trustee's Agreed Motion for Extension of Time to File Objections to Claimed Exemptions* ("Agreed Order"), which extended the time for the Trustee to object to the Debtor's exemptions until December 31, 2007. The Court subsequently extended the time for the Trustee to object to the Debtor's exemptions to May 31, 2008. On January 17, 2008, the Debtor testified at his 2004 examination that he sold the Rolex to a dealer at the Jewelry Exchange in Boca Raton "about a month or about two months ago." On May 29, 2008, the Trustee filed an *Objection to Exemptions*. On September 17, 2008, the Court entered an *Order Sustaining Trustee's Objection to Exemptions*, which sustained the Trustee's objection to the Debtor's claimed exemption for the Rolex.

At his 2004 examination, the Debtor initially testified that he received $2,500.00 for the Rolex, but then stated he only

received $1,700.00.  At trial, the Debtor conceded he failed to obtain any documentation of the sale and that he failed to make any effort to obtain such documentation. Based on the evidence provided, the Court finds that the Debtor sold the Rolex in December 2007 for $1,700.00.

Pursuant to the Pretrial Order, the Debtor admitted he failed to seek authorization from the Court or the Trustee to sell the Rolex, and he admitted he failed to advise the Court or the Trustee of the sale.  The Debtor testified that the proceeds from the sale of the Rolex were used for "living expenses."  He further testified that "my feelings were that I, you know, needed to generate some income, and that's one of the only things that we had."  The Debtor, however, acknowledged he understood his case listed assets of only $16,651.00 and debts exceeding $7 million, and consequently, the creditors' claims would not be paid.  He also confirmed his understanding that the proceeds of the Rolex may have gone towards payment of his creditors had he not sold it and spent the money.

The Debtor testified that he listed the value of the Rolex as $250.00 on Schedule B for two reasons.  First, he purchased the Rolex for $1,000.00 years earlier and second, based on his experience in selling used items, he would receive only "25 to 30 percent of what the value is."  The Debtor later testified that his experience in selling used items involved selling used furniture

when he and his wife moved from New York to Florida, and selling pieces of his wife's jewelry. The Debtor is a sophisticated businessperson. He has appeared on both television and radio, holding himself out to third parties as having expertise in real estate investment and management.

Due to the Debtor's unauthorized sale of the Rolex, which prevented the Trustee and any third party from inspecting the watch, the Court is unable to place a definitive value on the Rolex. However, the Trustee's internet searches of comparable Rolex Cellini watches indicated prices of approximately $8,000.00 to $18,000.00. Accordingly, while the Court does not determine the exact value of the Rolex, the Court finds that the Debtor substantially undervalued the Rolex by scheduling its value at $250.00.

The Debtor also failed to account for his ownership of the Movado on his Schedules. The Debtor, however, wore the Movado to the 2004 examination and offered it to the Trustee. At trial, the Debtor testified that he "just forgot" about the Movado when completing his Schedules because "[i]t was in a drawer." The Debtor testified that he did not remember that he owned the Movado until after he sold the Rolex.

## CONCLUSIONS OF LAW

The Court has subject matter jurisdiction over this proceeding

5

pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157(b).  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(J).

**1.   Objections to Discharge**

The purpose of bankruptcy is to provide unfortunate and honest debtors the opportunity to a fresh start.  In order to facilitate this purpose, "[o]bjections to discharge are to be strictly construed against the creditor and liberally in favor of the debtor." *Menotte v. Davis (In re Davis)*, 363 B.R. 614, 619 (Bankr. M.D. Fla. 2006)(citations omitted). However, "the discharge privilege is reserved only to honest debtors." *Reynolds v. Trafford (In re Trafford)*, 377 B.R. 387, 392 (Bankr. M.D. Fla. 2007); *Jennings v. Maxfield (In re Jennings)*, 533 F.3d 1333, 1338-39 (11th Cir. July 11, 2008)("The general policy that provisions denying such a discharge are construed liberally in favor of the debtor and strictly against the creditor applies only to the honest debtor."); *Scribner v. Bosket (In re Bosket)*, 369 B.R. 106, 110 (Bankr. W.D.N.Y. 2007)("A [d]ischarge is for an honest but unfortunate debtor.").

A burden-shifting framework applies to § 727 objections to discharge.  The plaintiff bears the initial burden of proving the objection by a preponderance of the evidence. *Joint Venture v. Fasolak (In re Fasolak)*, 381 B.R. 781, 787 (Bankr. M.D. Fla. 2007). "Once the plaintiff meets its initial burden, the debtor must then

6

present evidence that sufficiently explains why he should nevertheless receive a discharge." *Id.* (citations omitted).

### 2.   11 U.S.C. § 727(a)(2)(B)

Count one of the Complaint seeks denial of the Debtor's discharge pursuant to § 727(a)(2)(B) on the grounds that the Debtor transferred, without notice or consent, the Rolex with the intent to hinder, delay, or defraud the Trustee and creditors.

Section 727(a)(2)(B) of the Bankruptcy Code provides that:

> (a)   The court shall grant the debtor a discharge, unless –
>
> > (2)   the debtor, with intent to hinder, delay or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed –
> >
> > > (B)   property of the estate, after the date of the filing of the petition

11 U.S.C. § 727(a)(2)(B).

"Section 727(a)(2) is intended to prevent the discharge of a debtor who attempts to avoid payment to creditors by concealing or otherwise disposing of assets."  *In re Davis*, 363 B.R. at 619 (c*iting* 6 COLLIER ON BANKRUPTCY § 727.02 (15th ed. 2005)).

In order to meet the initial burden under § 727(a)(2)(B), a plaintiff must show by a preponderance of the evidence that: 1) there was a transfer, 2) after the filing of the petition, 3) of

property of the estate, 4) by the debtor with the intent to hinder, delay, or defraud his creditors. *See Petland, Inc. v. Unger (In re Unger)*, 333 B.R. 461, 470 (Bankr. M.D. Fla. 2005)(*citing Colonial Bank v. Johnson (In re Johnson)*, 301 B.R. 590, 596 (Bankr. N.D. Ala. 2003)).

The first two elements are established because the Debtor sold the Rolex after the Petition Date.  Accordingly, the Court finds that there was a post-petition transfer.

The third element requires that the post-petition transfer involve property of the estate. "Upon filing bankruptcy, all of the debtor's interest in property, including any potentially exempt property, becomes property of a bankruptcy estate under section 541." *In re Gatto*, 380 B.R. 88, 93 (Bankr. M.D. Fla. 2007). "On the filing date of a bankruptcy case, property of the estate includes exempt property. However, once a debtor's claim of exemption is allowed, exempt property is considered withdrawn from the estate." *In re Quezada*, 368 B.R. 44, 48 (Bankr. S.D. Fla. 2007)(citations omitted).  Therefore, when the Debtor sold the Rolex in December 2007, it was still property of the estate because the Court had not allowed the exemption.  Moreover, in December 2007, the time for the Trustee to object had not expired. Consequently, the third element is satisfied because the Rolex was property of the estate at the time of the sale.

8

The last element requires the Trustee to establish that the Debtor acted with the intent to hinder, delay, or defraud his creditors. "Since it is unlikely that a debtor will admit that he intended to hinder, delay, or defraud his creditors, the debtor's intent may be established by circumstantial evidence or inferred from the debtor's course of conduct." *In re Jennings*, 533 F.3d at 1339 (citation omitted); *In re Krehl*, 86 F.3d 737, 743 (7th Cir. 1996)("Because direct evidence of a debtor's intent usually will be unavailable, it may be inferred from the circumstances surrounding his objectionable conduct."); *Furr v. Lordy (In re Lordy)*, 214 B.R. 650, 664 (Bankr. S.D. Fla. 1997)("The intent to hinder, delay or defraud can be inferred from extrinsic evidence."); *Taunt v. Patrick (In re Patrick)*, 290 B.R. 306, 310 (Bankr. E.D. Mich. 2003).

As discussed above, the Debtor substantially undervalued the Rolex. The Debtor testified that he listed the Rolex's value at $250.00 based on his purchase price of $1,000.00 years earlier and his experience in selling used items where a seller receives only "25 to 30 percent of what the value is." The Court considers it improbable that the Debtor, a sophisticated businessperson, believed in good faith that substantially discounting his purchase price of $1,000.00 would produce an accurate current value for the Rolex. In addition, the Debtor sold the Rolex without authorization from the Court or Trustee. The Debtor not only failed to advise

the Court, the Trustee, and his attorney of the sale and receipt of proceeds, he also failed to provide any documentation of the sale. The Debtor further testified that he exerted no effort to obtain such documentation after this adversary proceeding was filed.

The Court finds unpersuasive the Debtor's assertion that he sold the Rolex post-petition in December 2007 because he believed it was exempt. The Court notes that the claimed exemption for the Rolex was not determined until September 2008 upon entry of the Court's *Order Sustaining the Trustee's Objection to Exemptions*. Moreover, the Agreed Order extended the Trustee's exemption objection deadline until December 31, 2007. The Court observes that the Debtor has experience with contested claimed exemptions. During the Debtor's 1994 bankruptcy, the debtor litigated the value of his claimed exempt assets. The dispute was resolved by the Debtor paying the trustee an amount equal to the value in excess of his allowed exemptions. The Debtor's wife also previously filed bankruptcy. Thus, the Debtor had knowledge of the rules that guide a debtor in bankruptcy. Therefore, the Court does not find credible the Debtor's testimony that he sold the Rolex because he believed it was exempt.[1]

---

[1] Were the Court to consider credible the Debtor's testimony that he believed his Rolex was exempt, the Court would find that the Debtor failed to exert the minimal effort to ascertain whether he could sell the Rolex. Even unsophisticated individuals are required to "comply with the most elementary steps to fulfill his obligation as a debtor in bankruptcy" and apply "the minimal effort necessary." *In re Davis*, 363 B.R. at 620. In this case, the Debtor was represented by highly regarded counsel to whom the Debtor could have easily turned for advice.

The Court concludes that the Trustee presented sufficient evidence to establish that the Debtor acted with the requisite actual intent to defraud the Trustee and creditors. As a result, the Trustee has sustained her burden for denial of the Debtor's discharge pursuant to § 727(a)(2)(B). The burden now shifts to the Debtor to "present evidence that sufficiently explains why he should nevertheless receive a discharge." *In re Fasolak*, 381 B.R. at 787 (citations omitted).

The Debtor articulated two reasons in an attempt to dissuade the Court from denying his discharge. First, the Debtor testified that the proceeds from the sale of the Rolex were necessary for "living expenses." He further testified that "my feelings were that I, you know, needed to generate some income, and that's one of the only things that we had." However, the Debtor understood he listed over $7 million in debt and only $16,651.00 in assets, and consequently, the creditors' claims would not be paid. He likewise understood that the proceeds of the Rolex may have gone towards payment of his creditors had he not sold it and spent the money. While the Court is sympathetic to the difficult situation debtors confront, debtors are not permitted to unilaterally dispose of assets of the estate. The Debtor appreciated the bankruptcy restrictions imposed upon the sale of the Rolex but nonetheless chose to sell the Rolex.

Second, the Debtor argued that the Trustee is responsible for the Debtor's sale of the Rolex because she failed to inquire about the Rolex or demand the Debtor turn over the Rolex prior to the Rule 2004 examination. The Court finds the Debtor's argument without merit. "Trustees are not expected to assume that honest debtors seeking a discharge and fresh start will violate the provisions of Section 727(a)(2)(B)." *In re Bosket*, 369 B.R. at 110.

The Court likewise rejects the Debtor's affirmative defense of abandonment. The Debtor presented no evidence to suggest that the Trustee expressly or impliedly abandoned the Rolex. "[T]he party seeking to demonstrate abandonment bears the burden of persuasion." *Mele v. First Colony Life*, 127 B.R. 82, 85 (D.D.C. 1991)(citations omitted). Moreover, in this case, "[m]ere inaction by the Trustee does not accomplish abandonment." *In re Prospero*, 107 B.R. 732, 735 (Bankr. C.D. Cal. 1989)(*citing In re Schmid*, 54 Bankr. 78, 80 (Bankr. Or. 1985)).

The Court concludes that the Debtor has not presented evidence that sufficiently explains why he should receive a discharge in spite of the evidence presented by the Trustee. Therefore, the Court holds that denial of the Debtor's discharge is warranted under § 727(a)(2)(B) of the Bankruptcy Code.

### 3. 11 U.S.C. § 727(a)(4)(A)

Count two of the Complaint seeks denial of the Debtor's discharge pursuant to § 727(a)(4)(A) on the grounds that the Debtor knowingly and fraudulently made a false oath by failing to disclose the Movado.[2]

Section 727(a)(4)(A) provides that:

(a) The court shall grant the debtor a discharge, unless –

    (4) the debtor knowingly and fraudulently, in or in connection with the case -

    (A) made a false oath or account;

---

[2] The Trustee's post-trial pleadings raise the issue of whether the Debtor's listed value of the Rolex implicates the false oath provision of § 727(a)(4)(A). However, in the Complaint, the Trustee did not assert a claim under § 727(a)(4)(A) on the grounds that the Debtor undervalued the Rolex. Furthermore, the Pretrial Order makes no mention of the claim. Rule 15(b) of the Federal Rules of Civil Procedure, which applies in adversary proceedings by virtue of Rule 7015 of the Federal Rules of Bankruptcy Procedure, permits "amendment of the pleadings to bring them in line with the evidence adduced at trial" with "the express or implied consent of the parties." *Int'l Harvester Credit Corp. v. E. Coast Truck*, 547 F.2d 888, 890 (5th Cir. 1977). However, "the introduction of evidence relevant to an issue already in the case may not be used to show consent to trial of a new issue absent a clear indication that the party who introduced the evidence was attempting to raise a new issue." *Id.* (*citing Bettes v. Stonewall Ins. Co.*, 480 F.2d 92 (5th Cir. 1973); *Wirtz v. Savannah Bank & Trust Co.*, 362 F.2d 857 (5th Cir. 1966); 6 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1493 (1971); 3 MOORE'S FEDERAL PRACTICE, P 15.13(2) (1974)); *Cioffe v. Morris*, 676 F.2d 539, 541-42 (11th Cir. 1982)("[I]mplied consent under Rule 15(b) will not be found if the defendant will be prejudiced; that is, the defendant had no notice of the new issue, if the defendant could have offered additional evidence in defense, or if the defendant in some other way was denied a fair opportunity to defend.")
    In the present case, the Debtor's listed value of the Rolex was relevant to the Trustee's claim that the Debtor transferred the Rolex with actual fraudulent intent under § 727(a)(2)(B). When the Trustee introduced the evidence, she did not indicate that she planned to use the evidence to support a claim under § 727(a)(4)(A) on the grounds that the Debtor undervalued the Rolex. Therefore, the Court declines to address the issue on its merits because the Debtor did not impliedly consent to trial of the new issue, and the Court deems it unnecessary given the Court's conclusions under § 727(a)(2)(B).

11 U.S.C. § 727(a)(4)(A).

"Section 727(a)(4) was established to ensure that the trustee and the creditors would receive reliable information in order to assist the trustee in the administration of the estate." *In re Trafford*, 377 B.R. at 393 (*citing Discenza v. MacDonald (In re MacDonald)*, 50 B.R. 255 (Bankr. D. Mass. 1985)).

In order to meet the initial burden under § 727(a)(4)(A), the plaintiff must establish that: 1) the debtor made a material false oath, and 2) the false oath was made knowingly and fraudulently. *Swicegood v. Ginn*, 924 F.2d 230, 232 (11th Cir. 1991); *In re Unger*, 333 B.R. at 465.

As to materiality of the false oath, the Eleventh Circuit has stated that "[t]he subject matter of a false oath is 'material,' and thus sufficient to bar discharge, if it bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property." *Chalik v. Moorefield (In re Chalik)*, 748 F.2d 616, 618 (11th Cir. 1984)(citations omitted); *Miller v. Burns (In re Burns)*, 395 B.R. 756, 767 (Bankr. M.D. Fla. Aug. 8, 2008); *Menotte v. Moore (In re Moore)*, 375 B.R. 696, 703 (Bankr. S.D. Fla. 2007); *In re Lordy*, 214 B.R. at 666. With respect to the first element, the Court concludes that the Debtor's failure to disclose the Movado in his Schedules concerns the existence and

disposition of his property, and thus, constitutes a material false oath.

As to knowing and fraudulent intent, because intent is difficult to prove by direct evidence, "[t]he circumstances surrounding the fact may warrant the inference that the debtor, in fact, committed willfully and knowingly a false oath." *In re Trafford*, 377 B.R. at 394 (*citing Dulbina v. Sklarin (In re Sklarin)*, 69 B.R. 949 (Bankr. S.D. Fla. 1987)). "It is without dispute that an occasional omission from schedules will seldom be accepted as a satisfactory basis to establish the claim of a false oath, and some innocent omissions due to oversight may be excused." *Id.* (*citing Boroff v. Tully (In re Tully)*, 818 F.2d 106 (1st Cir. 1987)); *Jensen v. Slater (In re Slater)*, 318 B.R. 881, 888 (Bankr. M.D. Fla. 2004).

The evidence presented leads to the conclusion that the Debtor committed an innocent omission. The Debtor wore the Movado to the 2004 examination, which mitigates against an inference that the Debtor endeavored to conceal the asset from the Trustee and creditors. The Court finds credible the Debtor's testimony that he "just forgot" the Movado and only remembered it upon the sale of the Rolex. At his 2004 examination, the Debtor testified that he purchased the Movado approximately five years ago and that he believed the Movado to be worth a mere $35.00. The Trustee testified that she was aware that the Movado might have limited

value and presented no evidence to contradict the Debtor's testimony as to the value of the Movado. Thus, with regard to the second element, the Court determines that the Trustee failed to meet her burden to establish that the Debtor knowingly and fraudulently failed to list the Movado on his Schedules.[3]

Therefore, the Court finds that denial of the Debtor's discharge is not warranted under § 727(a)(4)(A) of the Bankruptcy Code.

### CONCLUSION

For the reasons stated above, the Debtor's discharge is denied under § 727(a)(2)(B) because the Debtor transferred, without notice or consent, the Rolex with intent to defraud the Trustee and creditors. However, the Court finds that denial of the Debtor's discharge under § 727(a)(4)(A) is unwarranted because the Trustee failed to prove that the Debtor knowingly and fraudulently omitted the Movado from his Schedules.

### ORDER

The Court, having considered the evidence presented at trial, the testimony of the witnesses, the argument of counsel, the applicable law, the submissions of the parties, and being otherwise

---

[3] The Court notes that the Debtor's contention that the Trustee abandoned the Movado when she failed to obtain it during the 2004 examination is without merit. The Debtor presented no evidence to suggest that the Trustee expressly or impliedly abandoned the Movado.

fully advised in the premises, hereby

**ORDERS AND ADJUDGES** that:

1. The Debtor's discharge is denied pursuant to Section 727(a)(2)(B) of the Bankruptcy Code.
2. Pursuant to Federal Rules of Bankruptcy Procedure 9021, a separate final judgment shall be entered by the Court contemporaneously herewith.

###

Copies furnished to:

Kenneth B. Robinson, Esq.

Anthony F. Cutaia
2095 Park Ct
Boca Raton, FL 33486